IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MYKAYA LEE RILEY,                  §
TDCJ #1453474,                     §
                                   §
            Petitioner,            §
                                   §
v.                                 §        CIVIL ACTION NO. H-11-3083
                                   §             consolidated with Civil
RICK THALER, Director,             §              No. H-11-3086 and
Texas Department of Criminal Justice - §              No. H-11-3088
Correctional Institutions Division, §
                                   §
            Respondent.            §

## MEMORANDUM AND ORDER

The petitioner, Mykaya Lee Riley (TDCJ #1453474), has filed a petition for a writ of

habeas corpus under 28 U.S.C. § 2254 to challenge three related state court convictions.  The

respondent has answered with a motion for summary judgment, arguing that the petition must

be denied [Doc. # 14].  Riley has filed a cross-motion for summary judgment in reply, along

with supporting exhibits from the state court record [Docs. # 17, # 18].  After considering all

of the pleadings, the state court records, and the applicable law, the Court grants the

respondent's motion, denies the petition, and dismisses this case for reasons that follow.

## I.    BACKGROUND

A local grand jury returned three separate indictments against Riley in Fort Bend

County cause numbers 39915A, 39916A, and 39917A, charging him with aggravated sexual

assault.  The State enhanced those charges for purposes of punishment with allegations that

Riley had at least two prior felony convictions for attempted burglary of a building and

aggravated robbery.  At the State's request, the charges were consolidated for a joint trial in the 434th District Court of Fort Bend County, Texas.  During that trial, three women (B.G., J.B., and K.B.) testified that Riley threatened them with a firearm, bound them with duct tape, and then forced them to engage in various sex acts without their consent.  A jury found Riley guilty as charged of using or exhibiting a deadly weapon during the commission of each sexual assault.  On July 17, 2007, the same jury found that the enhancement allegations were true and sentenced Riley to serve 50 years' imprisonment in each case.  The trial court imposed the sentences to run concurrently.

On direct appeal, Riley challenged the factual and legal sufficiency of the evidence. Riley argued further that his in-court identification was tainted by an impermissibly suggestive photo-lineup procedure and that the trial court erred by failing to include a jury instruction on a lesser included offense.  An intermediate court of appeals rejected those arguments and affirmed the conviction after summarizing the evidence admitted at trial, as follows:

> On January 20, 2004 at approximately 8:00 a.m., the complainant B .G. was walking from a friend's house to a neighborhood store on or near Woodfair Drive in Houston, Texas.  [Riley] drove up to B.G. in a red Mitsubishi Eclipse and asked her if she needed a ride.  B.G. had never met [Riley] before this encounter, but she agreed to take a ride from him. As soon as B.G. sat in the passenger seat of the Eclipse, [Riley] pointed a black revolver at her head.  He told B.G. that "he killed a ho [*sic*] and my wife left me."  Using the gun to ensure her compliance, [Riley] forced B.G. to place her head beneath the dashboard of the Eclipse.  B.G. still managed to look out the window of the Eclipse to determine their location.  She determined that [Riley] was taking her to the Brightwater Subdivision in Missouri City, Texas.

2

[Riley] drove into the garage of his home at 4526 Lakeside Meadow in Missouri City, Texas ("home").  While pointing the gun at B.G., he forced her out of the Eclipse and placed duct tape on her mouth and eyes.  He also used brown rope to bind her hands. B.G. could see [Riley] through a hole in the duct tape covering her eyes.  [Riley] led her into the den of his house and placed her near a white or tan leather sofa ("sofa").  He went into the kitchen and left B.G. alone in the den.  When he returned, he removed the duct tape from B.G.'s mouth and forced her to perform oral sex on him.  While still pointing the gun at her head, [Riley] untied her hands and told B.G. to take off her clothes.  After B.G. complied, [Riley] made her bend face-forward over the sofa and began performing anal sex on her.  When B.G. began to scream because of the discomfort, [Riley] brought out a black whip and hit B.G. with it.  He told B.G. that if she did not stop screaming, he "would beat her with [the whip]."

After the anal sex act was completed, [Riley] returned to the kitchen for a few seconds.  When he returned, he again forced B.G. to bend face-forward over the couch and performed vaginal sex on her from behind.  After completing the vaginal sex act, [Riley] returned to the kitchen.  B.G. removed the tape from her eyes and released herself from the rope.  She ran naked out the door of [Riley]'s house to find a neighbor willing to call the police on her behalf.

Stephen Montoya, [Riley]'s neighbor residing at 4531 Lakeside Meadow in Missouri City, Texas, heard B.G. screaming and walked outside to find B.G. searching for help.  He beckoned B.G. over to his house but then hid after [Riley] drove up in the Eclipse.  [Riley] waved a gun at B.G. and seized her.  Montoya called the police.  After [Riley] forced B.G. back into the car, he told her that he would "have to kill her."

[Riley] returned to the house and forced B.G. inside.  They heard police sirens, and [Riley] got nervous.  [Riley] gave B.G. water and fed her gumbo. He promised to let her go if she agreed not to tell anyone about her capture and sexual assault.  She agreed not to tell anyone.  [Riley] told her to take a shower in his bathroom.  He also gave B.G. clean undergarments and returned her clothes. B.G. put on her clothes and [Riley] dropped her off at her friend's house.

On January 21, 2004, B.G. approached Houston Police Department ("HPD") Officer S. Chaffin in the parking lot of an apartment complex located at 10202 Forum Park in Houston, Texas.  B.G. told Officer Chaffin that she

had been sexually assaulted the previous day.  Another HPD officer took B.G. to Southwest Memorial hospital in Houston, Texas for a sexual assault examination.

At trial, B.G. testified about her encounter with [Riley]. On cross-examination, she admitted that she had ten previous felony convictions, including two convictions for delivery of a controlled substance in 1998 and 2005, three prostitution convictions in 2002, 2003 and 2004, a public lewdness conviction in 2004, and a possession-of-controlled-substance conviction in 2006.

On January 29, 2004, complainant J.B. was walking toward the 10000 block of Bissonnet near the corner of Woodfair and Bissonnet.  [Riley], driving a gold Jeep Cherokee, was traveling in the opposite direction from J.B. [Riley] turned his vehicle around, drove past J.B. and parked at a convenience store.  Although J.B. was unacquainted with [Riley], she walked up to the Jeep and made an agreement with [Riley] to exchange consensual vaginal sex at [Riley]'s home for a $30 payment.  J.B. got into [Riley]'s Jeep and they drove to [Riley]'s home.  [Riley] drove onto the driveway outside the garage of his home.  [Riley] and J.B. left the Jeep and walked through [Riley]'s dining room and into his den.  J.B. sat on [Riley]'s sofa as he left the den briefly.  [Riley] returned to the den, leaping onto J.B. and pointing his gun at her head.  He forced J.B. to lie on her stomach on the floor.  He covered J.B.'s eyes with duct tape.  J.B. asked [Riley] if she could go to the restroom; he led her to his restroom and she used it.  [Riley] led J.B. back to the den and told her to get undressed.  She complied and laid on her stomach on the floor.  [Riley] taped J.B.'s wrists and ankles, effectively immobilizing J.B.

[Riley] left the den for five to ten minutes. He returned, untaped J.B.'s ankles and forced her to kneel.  He told J.B. to perform oral sex on him and she complied.  After the oral sex act was completed, [Riley] placed J.B. over his sofa face-forward and performed anal sex on her.  J.B. did not resist because she was afraid that [Riley] would shoot her.

After the anal sex act was completed, [Riley] took J.B.'s jacket, placed it on the sofa and told her to sit on the jacket.  He removed the tape from J.B.'s eyes and hands and allowed J.B. to clean herself in his bathroom. J.B. went into the bathroom, cleaned herself and got dressed. After J.B. left the bathroom, [Riley] taped her eyes and hands again.  He led her into the garage and forced her into the back seat and made her lie down.  [Riley] drove for 10 minutes and then untaped J.B.'s hands and dropped her off behind a corner

4

store near the corner of Country Creek and Woodfair in Houston, Texas.  J.B. walked home.

On January 30, 2004, J.B. intended to walk to the HPD Westwood substation to report the sexual assault.  On her way to the substation, she saw HPD officer I. Sanders monitoring traffic in the parking lot of a Chevron service station at the corner of Beechnut and Beltway 8 in Houston, Texas. J.B. reported the crime to Officer Sanders.  Officer Sanders took J.B. to Southwest Memorial Hospital to get a sexual assault examination.

At trial, J.B. testified about her encounter with [Riley].  On cross-examination, she admitted that she had solicited eight men for prostitution, not including [Riley]. She also admitted that she had a theft conviction in 1994.

On February 17, 2004, complainant K.B. was walking from a motel to a friend's house on Club Creek Drive in Houston, Texas.  [Riley] drove past her in his Jeep, turned around and parked at Emerald Apartments on Woodfair and Club Creek.  [Riley] offered K.B. $25 to come to his house to smoke marijuana with him.  When K.B. told him she did not smoke marijuana, he asked if she would "ride with him" for $25.  K.B. understood that [Riley] was asking her to negotiate an agreement of consensual sex for a payment of $25.

To confirm that [Riley] was not a police officer, K.B. touched [Riley] on his penis.  [Riley] responded by touching K.B. on her breast. K.B. agreed to the sex-for-payment arrangement and got into the passenger seat of [Riley]'s Jeep and they drove behind another apartment complex located on Woodfair Drive in Houston, Texas.  [Riley] drove to the apartment complex, but he got nervous after he saw several people watching them.

[Riley] drove near the fence line of another apartment complex. K.B. climbed over the console and into the back seat and took off her pants.  [Riley] followed K.B. into the back seat, knelt and pulled out his gun.  [Riley] forced K.B. to lie on her stomach and place her hands behind her back.  [Riley] used duct tape to bind K .B.'s ankles and wrists and placed duct tape over her face.

[Riley] left the back seat and entered the driver's seat of his Jeep. K.B.'s view was only partially obstructed because she could see through a hole in the tape covering her face. [Riley] drove away from the apartment complex while holding his gun to K.B.'s head.  K.B.'s leg "popped loose" from the duct tape during their travel to [Riley]'s home.

[Riley] drove into his garage and closed the garage door behind the vehicle. He pulled K.B. out of the Jeep and led her into the den. The duct tape fell from K.B.'s eyes, and K.B. saw [Riley] standing naked next to his sofa. [Riley] told K.B. to perform oral sex on him and K.B. complied.  After she performed the oral sex act, he told K.B. to lie on her back.  [Riley] put on a condom and performed a vaginal sex act on K.B.

After he performed the vaginal sex act on K.B., he found her pants and dressed her.  He also gave K.B. a glass of water.  [Riley] led K.B. out to the garage and forced her into the back seat of his Jeep.  He drove away from his home for five to ten minutes and then decided to return to his home with K.B. [Riley] returned to his garage and led K.B. out of the back seat of the Jeep.  He led K.B. back to his sofa in his den and pulled down K.B.'s pants.  [Riley] forced K.B. to bend over his sofa face-forward and performed an anal sex act on her.

After he performed the anal sex act, he led K.B. out to the garage and placed tape over her entire head.  [Riley] led K.B. into the back seat of the Jeep and drove away from his home.  He drove K.B. to a Kroger strip center in Stafford, Texas and dropped her off.  [Riley] also left K.B. with a steak knife to cut herself loose from the duct tape.

K.B. cut herself loose and found someone to give her a pen and paper to write down [Riley]'s license plate number.  She walked over to the Kroger store located at 220 FM 102 in Stafford, Texas and found Stafford Police Department Officer L. Whitby.  K.B. approached Officer Whitby and reported her capture and sexual assault.  K.B. still had the duct tape on her body and was carrying [Riley]'s steak knife.  Officer Whitby called an ambulance and K.B. was transported to Memorial Hospital in Fort Bend for a sexual assault examination.

At trial, K.B. testified about her encounter with [Riley]. On cross-examination, she admitted that she had thirteen previous felony convictions, including four theft convictions in 1992, 1995, 1996 and 2003, a reckless-injury-of-a-child conviction in 1994, an extortion conviction in 1995, two forgery conviction in 1997 and 2000, a [conviction for possession of a controlled substance] in 1999, a [conviction for credit-card-abuse] in 2000, a [conviction for manufacturing a controlled substance] in 2002, a [conviction for delivery of a controlled substance] in 2002, and a theft conviction in 2003.

On March 2, 2004, Missouri City Police Sergeant Pete Paske received an assignment to investigate J.B.'s sexual assault complaint. Sergeant Paske got information about J.B.'s complaint from HPD Detective K. Swatzel and HPD Sergeant G.C. Glenn. Sergeant Paske, Detective Swatzel, and Sergeant Glenn took J.B. around the Missouri City area to determine where she was taken by [Riley]. J.B. recalled a sign that read "Brightwood," and Paske determined that the sign actually read "Brightwater."

When the initial ride with J.B. did not locate [Riley]'s home, Sergeant Paske decided to patrol the Brightwater neighborhood for several days looking for [Riley]'s home or vehicle. Sergeant Paske saw [Riley]'s Jeep and retrieved the license plate number. Using the license plate number, Sergeant Paske discovered the name of [Riley]'s brother, Rosell Dinell Riley. Using this name, Sergeant Paske asked Detective Swatzel and HPD to assist in preparing a photo lineup. Detective Swatzel prepared the photo lineup using the picture of [Riley]'s brother.

Sergeant Paske received the HPD photo lineup and showed the photos to J.B. after giving her an admonishment that the photo lineup might not show her assailant. J.B. viewed the photo spread but did not identify anyone as her assailant.

Sergeant Paske then discovered [Riley]'s name and used driver's license information to get [Riley]'s address. He asked the Texas Department of Public Safety ("DPS") to prepare a photo lineup, this time using [Riley]'s picture. DPS returned a photo lineup and placed [Riley]'s picture in the third position on the lineup. On March 15, 2004, Sergeant Paske showed the DPS photo lineup to J.B. She immediately identified [Riley] as her assailant and initialed and dated [Riley]'s photo located in the third position on the photo lineup.

Based on J.B.'s identification, Sergeant Paske obtained a search warrant for [Riley]'s home. Sergeant Paske found [Riley]'s gun between his mattress and box spring. [Riley] was arrested on March 16, 2004. On March 22, 2004, Paske showed a different copy of the DPS photo lineup to B.G. B.G. likewise identified [Riley] as her assailant. Paske did not show the photo spread to K.B.

At trial, the State presented evidence obtained from a fiber and duct tape analysis through testimony from DPS trace evidence analyst Faith Davis. Davis testified that the DPS lab performed a fiber and duct tape analysis on K.B.'s clothes and the duct tape used by [Riley] on K.B. Davis testified that

7

the DPS lab found fibers from the outfit K.B. was wearing during her assault in [Riley]'s home.  The DPS lab also found that the duct tape used on K.B. matched one roll of duct tape found at [Riley]'s residence.

The State also presented DNA evidence through the testimony of Jennifer Otto, a forensic DNA analyst employed by Identigene.  Identigene received anal swabs and buccal swabs from K.B. and buccal swabs from [Riley].  Otto testified that K.B. and [Riley] could not be excluded as contributors to the DNA mixture detected in samples taken from K.B.  Identigene also took samples of the stains from the jacket J.B. was wearing during her assault and a buccal swab from [Riley].  The DNA found on J.B.'s jacket matched the DNA from [Riley]'s buccal swab.

[Riley] presented no evidence during the guilt/innocence phase of the jury trial.  However, he raised several objections at trial.  He objected that the photo spread had not been properly authenticated or identified by [J.B.]. He also argued that the photo spread was impermissibly suggestive.

[Riley] based his objection on J.B.'s testimony.  J.B. testified that the photo spread shown to her when she made her out-of-court identification did not look like the photo spread shown to her at trial because "it was like in a larger format."  J.B. also testified that the photo spread "was like in a big binder and there was a couple of photos already in there."  She testified that she could not recall if the photo spread shown at trial displayed the same photos as the photo spread shown to her when she made her out-of-court identification, but she testified that the photo of [Riley] in the photo spread shown at trial was both larger than and in a different position from the photo of [Riley] in the photo spread she saw when she made her out-of-court identification.   [Riley] renewed his objection during Sergeant Paske's testimony prior to B.G.'s testimony.  However, B.G. was not asked about the photo spread at trial. J.B., K.B., and G.B. all immediately identified [Riley] at trial when asked if they saw their attacker in the courtroom.

*Riley v. State*, Nos. 01-07-0072-CR, 01-07-00721-CR, 01-07-00722-CR, 2009 WL 2051212

(Tex. App. — Houston [1st Dist.] July 16, 2009).  After the intermediate appellate court

affirmed the conviction, the Texas Court of Criminal Appeals refused Riley's petition for

discretionary review.

Subsequently, Riley challenged his conviction by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure.  In that application, Riley argued that he was denied the right to a fair and impartial trial because, shortly before closing arguments on July 16, 2007, two jurors saw him being escorted by a deputy while in handcuffs.  Riley argued further that he was denied effective assistance of counsel because his defense attorney (1) failed to file a motion to reduce his bond; (2) failed to request a jury instruction on the lesser included offense of sexual assault; (3) denied him the right to testify in his own defense; and (4) failed to object to the joinder of offenses for trial.  Riley added that the trial court erred by (1) setting a bond that he could not afford to pay; (2) failing to include a jury instruction on the lesser offense of sexual assault; and (3) granting the State's motion for joinder because the Texas joinder statute was "unconstitutional."  After considering the record and an affidavit from Riley's defense counsel, the state habeas corpus court, which also presided over Riley's trial, entered written findings and recommended that relief be denied.  The Texas Court of Criminal Appeals agreed and denied relief without a written order based on the trial court's findings.  *See Ex parte Riley,* No. 75,766-01 at 124-33 (Tex. Crim. App. May 25, 2011).[1]

---

[1]   Riley filed three applications for a writ of habeas corpus to challenge his convictions for aggravated sexual assault and those proceedings were filed  with the trial court as Fort Bend County cause numbers 39915A-HC1, 39916A-HC1, and 39917A-HC1.  The trial court reviewed the records of these cases and issued a joint set of findings and conclusions of law.  The Texas Court of Criminal Appeals reviewed the records and denied relief without a written order on the findings of the trial court in Application Nos. 75,766-01, 75,766-02, and 75,766-03.  Because the joint findings are identical, the Court will cite to the state court records in *Ex parte Riley*, No. 75,766-01 for ease of reference.

Riley now challenges his conviction with a petition for federal habeas corpus relief under 28 U.S.C. § 2254.  Riley argues that he is entitled to relief because, as alleged in state court, two jurors saw him being escorted to court while in handcuffs, thereby depriving him of a fair and impartial trial.  Riley raises the same claims of ineffective assistance of counsel against his defense attorney and he complains further that the trial court erred by failing to give a jury instruction on a lesser included offense.  In addition, Riley argues that the Texas statute on joinder of offenses is unconstitutional.  The respondent has filed a motion for summary judgment arguing that Riley's petition must be denied because his claims do not merit relief.  The parties' contentions are discussed further below under the governing federal habeas corpus standard of review.

## II.    STANDARD OF REVIEW

Motions for summary judgment are typically governed by Rule 56 of the Federal Rules of Civil Procedure.  In this instance, the respondent's summary-judgment motion must be determined in compliance with the federal habeas corpus statutes.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002); *see also Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).  Federal habeas corpus proceedings filed after April 24, 1996 are governed by provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  To the

10

extent that the petitioner's claims were "adjudicated on the merits" in state court, the AEDPA standard found at 28 U.S.C. § 2254(d) applies.[2]

Claims presenting pure questions of law and mixed questions of law and fact are governed by 28 U.S.C. § 2254(d)(1), which precludes habeas relief unless a petitioner demonstrates that the state court's decision to deny a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005). Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409.

---

[2]     There are additional limitations on federal habeas review. Pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

The Supreme Court has clarified that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398 (2011).  Where applicable, a state court's findings of fact "are 'presumed to be correct' unless the habeas petitioner rebuts the presumption through 'clear and convincing evidence.'" *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (quoting 28 U.S.C. § 2254(e)(1)).  This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well.  *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).  Where pure questions of fact are concerned, a petitioner is not entitled to relief unless he demonstrates that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see also Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008).

As this deferential standard reflects, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted).  In that respect, the AEDPA standard "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings." *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011).  The Supreme Court has underscored the extent of this deferential standard:

> [28 U.S.C. § 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining [a writ of] habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.  This deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision.  *See Early v. Packer*, 537 U.S. 3, 7 (2002); *see also Richter*, 131 S. Ct. at 785 (confirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").  The petitioner's claims are examined below under the applicable legal standard.

## III.   DISCUSSION

### A.   Right to a Fair and Impartial Trial

Riley complains that he was denied a fair and impartial trial because, shortly before closing arguments at the guilt/innocence phase of the trial, two jurors saw him being escorted to court while in handcuffs.  After Riley's defense counsel moved for a mistrial, the trial court held a brief hearing outside of the jury's presence.  *Court Reporter's Record*, vol. 7, at 5-6.  At that hearing, a bailiff acknowledged that he saw two jurors "behind the glass door leading to the [courtroom]" while he was transporting Riley to a holding cell in handcuffs.

13

*Id.* at 7.  The bailiff estimated that, when the encounter occurred, the jurors were at least 60 feet away in a vestibule at the entrance to the courtroom.  *Id.*  The bailiff acknowledged that Riley was wearing handcuffs, but clarified that Riley was wearing courtroom attire, not jail clothing.  *Id.*  Nevertheless, as soon as the bailiff observed the jurors, he immediately positioned Riley behind the corner and out of view until the courtroom vestibule was clear. *See id.* at 7, 9.  The bailiff estimated that the encounter lasted one or two seconds and he could not confirm whether the jurors actually noticed Riley.  *See id.*  After the bailiff completed his testimony, the trial court denied Riley's motion for a mistrial after determining that the jurors had, at most, "two seconds" to see Riley and that any possible glimpse occurred through a glass doorway from a distance of 60 feet.  *Id.* at 11-12.  The trial court declined to question the jurors involved, noting that the trial was near its end and that such an inquiry could be more "counterproductive" than beneficial.  *Id.* at 12.  Riley maintains, however, that the encounter he was denied a fair and impartial trial because the encounter deprived him of the presumption of innocence.

The respondent notes that this claim was rejected by the state habeas corpus court, which found that the issue presented (regarding the denial of a fair and impartial trial) "should have been raised on direct appeal and is not cognizable" on habeas corpus review. *Ex parte Riley*, No. 75766-01 at 131 (citing *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989)).  Because the claim was rejected for procedural reasons, the respondent argues that review is barred by the doctrine of procedural default.  Alternatively, the respondent argues that the claim is without merit.  These arguments are addressed in turn.

14

### 1. Procedural Default

The record confirms that Riley did not raise a claim concerning the right to a fair and impartial trial on direct appeal. As a result, when Riley attempted to present this issue on collateral review, the state habeas corpus court found that the claim was barred by state law, which requires claims of this nature to be presented on direct appeal. *Ex parte Riley*, No. 75766-01 at 131. In Texas, matters that should have been raised on direct appeal may not be litigated on habeas review. *See Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996); *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989). The Fifth Circuit has recognized that this state rule is adequate to bar federal habeas corpus review. *See Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007); *Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006). Riley does not show otherwise. Therefore, Riley's claim that he was denied the right to a fair and impartial trial is procedurally barred unless an exception applies.

Where a petitioner has procedurally defaulted a claim in state court, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Cause to overcome a procedural default requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. *See Barrientes v. Johnson*, 221

15

F.3d 741, 769 (5th Cir. 2000) (citation omitted).  In the non-capital context, the fundamental-miscarriage-of-justice exception requires a showing "that a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense."  *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (quotation omitted).  Because Riley does not show that he is actually innocent, or that the fundamental-miscarriage-of-justice exception otherwise applies, consideration of any procedurally barred claim in this case depends on a showing of both cause and prejudice.

Riley has filed a response to the motion for summary judgment.  Riley does not, however, propose any cause for his failure to present this claim properly on direct appeal.[3] Absent a showing of cause, the claim is procedurally barred and a federal habeas corpus court need inquire further by examining the issue of prejudice.  *McClesky v. Zant*, 499 U.S. 467, 502 (1991).  For reasons discussed briefly below, Riley fails to show prejudice here because he does not establish that his underlying claim would have been successful or that the result of his direct appeal would have been different if the issue had been raised properly in state court.  Therefore, the respondent is entitled to summary judgment on this issue.

### 2.        The Claim is Without Merit

---

[3]       Ineffective assistance of counsel may, in some circumstances, constitute cause for a procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  "Not just any deficiency will do, however; the assistance must have been so ineffective as to violate the Federal Constitution."  *Id.*  "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim."  *Id.* (emphasis in original).  Riley has not raised an independent claim that he was denied effective assistance of counsel on direct appeal and he proposes no other explanation for his failure to comply with state procedure.

Alternatively, even assuming that the procedural bar does not apply, the respondent argues that Riley's claim is without merit.  The Court agrees.  In this case, the trial court determined that two jurors may have observed Riley from a substantial distance, for no more than one or two seconds, while he was being escorted in handcuffs outside the courtroom. As noted above, the record reflects that Riley was wearing courtroom attire when the inadvertent encounter occurred.  Riley does not demonstrate that he is entitled to prevail under these circumstances.

In support of his claim, Riley relies on the holding in *Deck v. Missouri*, which recites the long-standing rule that "routine use of visible shackles during the guilt phase" is permissible "only in the presence of a special need." 544 U.S. 622, 627 (2005).  In *Deck*, the Supreme Court held further that, absent specific justification, "courts cannot routinely place defendants in shackles or other physical restraints visible to the jury during the penalty phase of a capital proceeding." *Id.* at 633.  Because Riley does not allege that he was placed in handcuffs or shackles during trial, his claim is distinguishable from the one in *Deck*.  Rather, Riley's claim concerns a brief, incidental encounter that occurred outside the courtroom, which does not implicate the level of prejudice involved with a defendant who is bound in handcuffs or shackles during trial in open view of the jury.

The Fifth Circuit has recognized that "brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial, and defendants bear the burden of affirmatively demonstrating prejudice." *United States v. Diecidue*, 603 F.2d 535, 549-50 (5th Cir. 1979) (citing *Wright v. Texas*, 533 F.2d 185, 187-

17

88 (5th Cir. 1976)); *see also White v. Johnson*, 111 F.3d 892, 1997 WL 156829, *8 (5th Cir. 1997) (unpublished) (observing that brief or incidental viewing by the jury of the defendant in handcuffs does not necessary demonstrate prejudice) (citations omitted).  As the Fifth Circuit has explained, the potential for prejudice is much less in this context because "[t]he possible awareness that a defendant in a violent-crime case awaits trial in jail is not the same type of prejudice faced by a defendant who sits in shackles or leg irons in front of the jury that will decide his fate." *United States v. Turner*, — F.3d —, 2012 WL 716885, *8 (5th Cir. March 7, 2012); *see also United States v. Leach*, 429 F.2d 956, 962 (8th Cir. 1970) ("It is a normal and regular practice . . . to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this.").  In light of the evidence against him, which was substantial, Riley does not demonstrate that he was prejudiced by the brief encounter that occurred, if at all, outside the courtroom.  Riley does not establish a constitutional violation or show that he is entitled to relief on this issue and, therefore, the respondent is entitled to summary judgment on this claim.

### B.    Ineffective Assistance of Counsel

Riley contends that he is entitled to relief because he was denied the effective assistance of counsel.  Riley was represented at trial by local criminal defense counsel Cary Faden and co-counsel Mike Diaz.  Riley argues that Faden was deficient for:  (1) failing to file a motion to reduce his bond; (2) failing to request a jury instruction on the lesser included offense of sexual assault; (3) denying him the right to testify in his own defense; and (4) failing to object to the joinder of offenses for trial.  The record confirms that these allegations

were rejected on state habeas corpus review.  In that proceeding, the state habeas corpus court found that Riley failed to establish that his attorney's performance was deficient.  *Ex parte Riley*, No. 75,666-01 at 132 (citing *Strickland v. Washington*, 466 U.S. 668(1984); *Williams v. State*, 310 S.W.3 d675, 687 (Tex. Crim. App. 2009); and *Ex parte Moody*, 991 S.W.3d 856, 857-68 (Tex. Crim. App. 1999)).

As the state habeas corpus court correctly noted, claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."  *Strickland*, 466 U.S. at 687.

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687.  Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694.  "A reasonable probability" requires

"a 'substantial' not just a 'conceivable,' likelihood of a different result." *Pinholster*, 131 S.

Ct. at 1403 (quoting *Richter*, 131 S. Ct. at 791).

   To the extent that Riley's ineffective-assistance claims were rejected in state court,

the central question is not whether this Court "'believes the state court's determination' under

the *Strickland* standard 'was incorrect but whether the determination was unreasonable —

a substantially higher standard.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting

*Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)).   In addition, "because the *Strickland*

standard is a general standard, a state court has even more latitude to reasonably determine

that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citation omitted).

Thus, this standard is "doubly deferential" on habeas corpus review.  *Id.*; *see also Richter*,

131 S. Ct. at 788 (emphasizing that the standards created by *Strickland* and § 2254(d) are

"highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations

omitted).  Riley does not show that the state court's decision to deny relief was unreasonable

for reasons discussed briefly below.

### (1)   Failure to Request a Reduced Bond

   Riley complains that the trial court set bond in excess of $300,000, which he was

unable to make.[4]  Riley contends that his attorney was deficient for failing to file a motion

for "bail reduction" prior to trial.  In his affidavit to the state habeas corpus court, defense

---

[4]     The record reflects that, upon Riley's arrest, the trial court set a bond in the amount of
       $100,000 in each case against him.  There were at least four indictments against Riley,
       however, and possibly more.  Thus, the total amount of the bond in Riley's case is unclear.

counsel explained that the trial court set a high bond for Riley because, in addition to the three cases set for trial, there were other charges pending against him. *Affidavit of Cary Faden*, at 2. Defense counsel filed an application for a pretrial writ of habeas corpus seeking "a significantly lower bond amount" or release on personal recognizance in the event that the State failed to meet the speedy-trial deadline. *Id.* That application was overruled by operation of law. *See id.* Riley did not ask counsel to pursue the issue further because, according to defense counsel, Riley acknowledged that it would be a "waste of time." *Id.* The state habeas corpus court stated that it was "well-acquainted" with defense counsel and found that his affidavit was "credible." Based on defense counsel's credible affidavit, the state habeas corpus court acknowledged that Riley's bond was "high because there were other pending cases" against him." *Ex parte Riley*, No. 75,666-01 at 127. Based on this record, the state habeas corpus court found that defense counsel was not deficient for attempting to have Riley's bond reduced. *See id*.

Importantly, the findings of fact made by the state habeas corpus court, which also presided over Riley's trial, are presumed correct for purposes of federal habeas corpus review unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). A federal habeas corpus court also must defer to credibility findings made by the finder of fact. *See Valdez*, 274 F.3d at 948, n. 11. Because the state habeas corpus court presided over the trial, where he had an opportunity to observe counsel's performance, the state court's credibility findings are "especially strong." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *see also Boyle*

*v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996) ("The presumption is particularly strong where, as here, the habeas court was the same court that presided over the trial.") (citing *May v. Collins*, 955 F.2d 299, 314 (5th Cir. 1992)).

Riley has not presented any evidence to undercut the state court's findings of fact and, therefore, they are presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, Riley does not propose any legal basis for obtaining a lower bond or demonstrate that his counsel was deficient for failing to raise a particular argument which, if presented, would have been successful. Absent a showing that counsel failed to raise a meritorious argument and that the outcome would have been different, a petitioner fails to demonstrate deficient performance or actual prejudice. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").

Riley does not establish a valid ineffective-assistance claim concerning his attorney's failure to pursue a lower bond and he does not show that the state court's decision to deny relief was unreasonable. It follows that Riley is not entitled to relief on this issue.

## (2)     Failure to Request a Jury Instruction

Riley complains that his attorney was deficient for failing to request a jury instruction on the lesser included offense of sexual assault.  Defense counsel explained in his affidavit that, although he could have requested such an instruction, ultimately it was the trial court's decision whether to give the jury the option to consider a lesser included offense.  The state habeas corpus court found that, even if counsel had requested such an instruction, Riley was not entitled to one because the evidence showed that he used or displayed a deadly weapon while sexually assaulting the victims.  *Ex parte Riley*, No. 75,666-01 at 128.  Under these circumstances, an instruction on the lesser included offense of sexual assault was not authorized by law.  *See id.*  Riley does not show that the state court's determination was unreasonable or incorrect.

To support a jury instruction on a lesser included offense in Texas, the evidence must include proof of the lesser offense, and the evidence must show that if the defendant is guilty, he is guilty *only* of the lesser included offense. *See Hall v. State*, 225 S.W.3d 524, 536-37 (citing *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). A person commits sexual assault in violation of Texas law if he intentionally or knowingly "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent . . . ." TEX. PENAL CODE § 22.011(a)(1)(A).  A person commits the offense of aggravated sexual assault if, while committing sexual assault, he "uses or exhibits a deadly weapon in the course of the same criminal episode." *Id.* § 22.021(2)(A)(iv). Because all three women testified that Riley used a deadly weapon during the course of committing

sexual assault, the evidence did not support an instruction for the lesser included offense of sexual assault.

Riley does not show that his counsel was deficient for failing to request a lesser included offense instruction on sexual assault. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . ."). Likewise, because Riley does not demonstrate that he was entitled to such an instruction, or that the trial court would have given one if a request had been made, Riley does not establish any prejudice. Under these circumstances, Riley does not show that his counsel was constitutionally ineffective or that the state court's decision to deny relief was unreasonable. Accordingly, Riley is not entitled to relief on this issue.

### (3)   Denial of the Right to Testify

Riley complains that his attorney was deficient for depriving him the right to testify in his own defense. During the state habeas corpus proceeding, defense counsel denied interfering with Riley's decision regarding whether to testify during the joint trial, which involved allegations of aggravated sexual assault against multiple victims. Counsel noted further that, in addition to the three indictments being tried before the jury, there was at least one other indictment for aggravated sexual assault pending against Riley. Counsel also suggested that there were "perhaps other victims" who had not yet come forward. Defense counsel added that Riley had prior felony convictions and other convictions that would be "fair game for the jury to hear about" during the guilt/innocence phase of the trial if Riley

24

elected to testify.  Counsel maintained that he fully explored these issues with Riley and that "it was his decision and his alone not to testify[.]"  The state habeas corpus court found that, based on counsel's credible affidavit, defense counsel did not prevent Riley from testifying at his trial.  *Ex parte Riley*, No. 75,666-01 at 128.

A criminal defendant has a fundamental constitutional right to testify on his own behalf.  *See Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994) (citation omitted).  This right is granted to the defendant personally and not to his counsel.  *See id*.  The Fifth Circuit has recognized that a defendant may waive his right to testify, and that defendants frequently do so on the advice of counsel.  *See id*.  Thus, there is no violation of the right to testify where the defendant merely acquiesced during trial to his attorney's recommendation that he not testify — even if the defendant decides later, in hindsight, that he should have testified.  *See id*.  Instead, a violation of this right occurs only if the "final decision that [the defendant] would not testify was made against his will."  *Id.* (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990)).

Riley does not allege that he was unaware of his right to testify.  Instead, it is evident that Riley chose not to testify in this case after consulting with his defense counsel.  To the extent that Riley did not take the witness stand based on his counsel's advice, he cannot show that he was denied his constitutional right to testify.  *See Jordan*, 34 F.3d at 312.  Based on this record, which reflects that Riley had prior convictions and other charges pending against him that could have been used to impeach his credibility, counsel's advice with regard to this issue was not constitutionally deficient.

Even assuming that counsel was somehow deficient for interfering with Riley's right to testify, and the record does not disclose any such deficiency, Riley fails to demonstrate actual prejudice.  Riley states that he would have testified that the victims were prostitutes who lacked credibility.  Defense counsel addressed the double-edged nature of Riley's proposed testimony in his affidavit to the state habeas corpus court.  In that respect, defense counsel explained that testimony of this sort would have opened the door for the State to cross-examine Riley about extraneous offenses perpetrated against other victims.  *See* TEX. R. EVID. 404(b) & 609(a); *see also Montgomery v. State*, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1990); *Albrecht v. State*, 486 S.W.2d 97, 99 (Tex. Crim. App. 1972).  Based on the strength of the State's case against him, Riley undoubtedly would have faced rigorous cross-examination from the prosecutor about his actions.  In light of the evidence against him, Riley fails to show how his testimony would have made a difference in the outcome of the proceedings.  *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) ("Considering the overwhelming evidence of [defendant's] guilt, we cannot conceive of anything [defendant] could have said that would have provided *any* reasonable possibility of a different outcome."); *see also United States v. Mullins*, 315 F.3d 449, 456-57 (5th Cir. 2002) (holding that, even where a counsel's performance was found deficient for failing to honor his client's request to testify, there was no valid ineffective-assistance claim absent a showing of actual prejudice); *United States v. Willis*, 273 F.3d 592, 598-99 (5th Cir. 2002) (same).

Riley has not established that his counsel's performance was deficient with regard to his right to testify or that he was actually prejudiced as a result.  Absent a showing of deficient performance or actual prejudice, Riley fails to demonstrate a valid claim of ineffective assistance of counsel in connection with his right to testify.  Based on this record, Riley does not otherwise establish that the state court's decision was unreasonable. Accordingly, Riley is not entitled to relief on this issue.

### (4)     Failure to Object

Riley complains that his attorney was deficient for failing to object to the "unconstitutional joinder" of the three indictments against him.  In his affidavit to the state habeas corpus court, defense counsel explained that he did not object to the State's motion for joinder of the three indictments because separate trials would have exposed Riley to the possibility of "stacked or consecutive sentences" for each case, rather than the concurrent sentence that he received.  Crediting defense counsel's explanation, the state habeas corpus court found that counsel was not unreasonable for failing to object and that his strategic decision was not deficient.  *Ex parte Riley*, No. 75,666-01 at 128.

Riley does not demonstrate that the joinder statute is unconstitutional and he does not provide specific facts in support of his assertion that counsel should have raised an objection to the joint trial.  Riley's conclusory allegation of ineffectiveness is not sufficient to demonstrate deficient performance or actual prejudice.  *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory

27

allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).

In addition, Riley does not show that his counsel's decision was unsound or that the state court's decision to deny relief was unreasonable. Strategic decisions made by counsel are entitled to substantial deference in the hindsight of habeas corpus review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"). A federal habeas corpus court may not find ineffective assistance of counsel merely because it disagrees with counsel's chosen trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). It is well established that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

As summarized above, the State presented substantial evidence in support of each indictment against Riley. By allowing these indictments to be joined for purposes of trial, defense counsel assured that Riley would serve a concurrent sentence rather than the possibility of several consecutive terms. Riley does not show that his trial was tainted by unfairness as the result of his attorney's strategic decision or that he was prejudiced as a result. Accordingly, Riley is not entitled to relief on this issue.

28

### C.     Jury Instruction on a Lesser Included Offense

Riley contends that he is entitled to relief because the trial court failed to include a jury instruction on the lesser offense of sexual assault.  The respondent correctly notes that, in a non-capital case, "the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue."  *Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999);  *see also Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988);  *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985).  Riley does not show otherwise and he is not entitled to habeas corpus relief on this claim as a matter of law.[5]  The respondent's motion for summary judgment on this issue is granted.

### D.     Texas Joinder Statute

Riley contends that he is entitled to relief because the Texas joinder statute is unconstitutional.  The state habeas corpus court rejected this claim because Riley failed to identify the statute specifically or to show that joinder was improper in his case.  *Ex parte Riley*, No. 75,666-01 at 130.  The respondent maintains that Riley has also failed to plead a claim that will support relief on federal habeas review.

Riley references § 3.02 of the Texas Penal Code, which allows a defendant to be prosecuted "in a single criminal action for all offenses arising out of the same criminal episode."  Riley does not allege facts demonstrating that the statute is unconstitutional or that

---

[5]     For reasons outlined above in connection with his claim for ineffective assistance of counsel, Riley does not show that he was entitled to a jury instruction on the lesser offense of sexual assault.

the trial court erred by joining the cases for a single trial.  As noted above in connection with Riley's ineffective-assistance claim, failing to join the cases would have exposed Riley to multiple consecutive sentences.  Riley does not otherwise demonstrate that the state court's decision was unreasonable.

Although Riley is a *pro se* litigant, his bare allegations are not sufficient to state a claim or warrant review.  *See Day*, 566 F.3d at 540-41.  Absent evidence in the record, a federal habeas corpus court cannot consider a petitioner's "bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citing *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971)).  The Fifth Circuit has repeatedly emphasized that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."  *Ross*, 694 F.2d at 1012 (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)).  Because Riley's conclusory assertions are insufficient to establish a constitutional violation, or to demonstrate a valid claim on federal habeas review, the respondent is entitled to summary judgment on this issue.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit

justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).  Rule 11 of the Rules Governing Section 2254 Cases now requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court concludes that reasonable jurists would not debate whether the petition should

have been resolved in a different manner.  Likewise, the Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim of the denial of a constitutional right.  Therefore, a certificate of appealability will not issue.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.    The respondent's motion for summary judgment [Doc. # 14] is **GRANTED**.

2.    The petitioner's cross-motion for summary judgment [Doc. # 17] is **DENIED**.

3.    The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED** with prejudice.

4.    A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>April 24</u>, 2012.

Nancy F. Atlas
United States District Judge